# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8639 | **DATE** | 11/12/2003 |
| **CASE TITLE** | Verotix System vs. Ann Taylor | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    Status hearing held and continued to 11/19/03 at 9:00 a.m. to set discovery deadlines. Also before the court is defendants Kurt Salmon Associates' motion to dismiss the plaintiffs' first amended complaint and on defendants Ann Taylors' motion to dismiss Counts I, III, V, VI, VII and VIII of the plaintiff's first amended complaint. For the reasons stated on the attached memorandum opinion, the Court hereby grants the motions to dismiss in part and denies them in part. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 13 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 42 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| MW | courtroom deputy's initials | 03 NOV 12 PM 12:34 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



VEROTIX SYSTEMS, INC., )
)
Plaintiff, )
)
v. ) No. 02 C 8639
)
ANN TAYLOR, INC., ANN TAYLOR )
STORES CORPORATION, ANN TAYLOR )
DISTRIBUTION SERVICES, INC., ANN )
TAYLOR RETAIL, INC., KURT SALMON )
ASSOCIATES, INC., KURT SALMON )
ASSOCIATES, KURT SALMON )
ASSOCIATES CAPITAL ADVISORS, INC., )
)
Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Kurt Salmon Associates' ("KSA") motion to dismiss Plaintiffs' first amended complaint and on Defendant Ann Taylor's motion to dismiss Counts I, III, V, VI, VII and VIII of Plaintiff's first amended complaint. For the reasons stated below we grant the motions to dismiss in part and deny them in part.

## BACKGROUND

Beginning in early 1998 Ann Taylor Inc. ("Ann Taylor") hired Plaintiff Verotix Systems Inc. ("Verotix") to trouble shoot its control system for the Ann Taylor warehouse in Louisville Kentucky. In late 1998 Ann Taylor installed the new control system at the Louisville facility called the warehouse control system. In February of 2000 Ann Taylor

1

began a retrofit project for its Louisville facility and allegedly hired Verotix to consult, design, and implement the warehouse control system. Verotix contends that it came up with a design change for Ann Taylor that became known as the "one hanger" or "garment on a hanger" ("GOH") system. Verotix alleges that the invention of the GOH system resulted in a more efficient routing system and saved Ann Taylor significant costs. Verotix claims that its consulting services were billed at a reduced rate because of Ann Taylor's promise to use Verotix to design, implement, license software and maintain the warehouse control system at the Louisville facility. Verotix also claims that it devoted over 4000 man hours to do consulting work for the retrofit project and that it limited the amount of business from other customers in order to have the manpower necessary to work on the retrofit project.

Ann Taylor hired KSA as the project integrator for the retrofit project. Verotix contends that KSA held a grudge against Verotix because in March 2000 KSA acted as a project coordinator for a project funded by StrideRite and KSA lost its contract because Verotix demonstrated that it was capable of meeting the customer's goals without a project integrator. In July 2000 as part of the retrofit project, Ann Taylor decided to make changes to its receiving and shipping conveyor system and instructed KSA to solicit outside bids for the work. Verotix alleges that it submitted a bid for the project, but that KSA put pressure on Verotix to submit designs sooner than other vendors. Verotix also contends that KSA made Verotix include costs in its bid that other vendors did not have to include and thus KSA was able to rig the bidding so that Verotix could not submit the lowest bid. On October 20, 2000, Verotix was informed that Key Handling Systems submitted the lowest bid for the project. KSA also informed Verotix that another outside vendor would be completing the implementation portion of the warehouse control system. Ann Taylor allowed Verotix to finish the project through February of 2001. Verotix alleges that Ann Taylor subsequently used the designs and blueprints submitted by

2

Verotix to implement the warehouse control system at the Louisville facility and to implement design enhancements created by Verotix such as the "one Hanger" design. In its first amended complaint Verotix brings an Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065 *et seq.*, claim against Ann Taylor (Count I), an ITSA claim against KSA (Count II), a fraudulent misrepresentation claim against Ann Taylor (Count III), a fraudulent misrepresentation claim against KSA (Count IV), a breach of contract claim against Ann Taylor (Count V), a breach of implied contract claim against Ann Taylor (Count VI), a quantum meruit claim against Ann Taylor (Count VII), a promissory estoppel claim against Ann Taylor (Count VIII), a tortious interference with contract claim against KSA (Count IX), and a tortious interference with prospective economic advantage against KSA (Count X).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint "should not be dismissed for a failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions.

*Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases" of his claim. *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

As an initial matter we note that Verotix improperly attempts in its briefs to reference arguments made in other documents. Absent leave by the court, briefs may be no more than fifteen pages and court will not be burdened with piecing together appended arguments from various documents in order to determine if a brief exceeds the maximum amount of pages. Verotix is warned not to waste any more of the court's time in this manner and that any documents with such irregularities will not be tolerated in the future.

### I. Illinois Trade Secrets Act Claim

Verotix brings ITSA claims against Ann Taylor and KSA. To state a claim for a violation of the ITSA a plaintiff must allege: 1) a trade secret, 2) that the trade secret was misappropriated, and 3) that it was used in the defendant's business. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266-67 (7th Cir. 1992). A plaintiff is required to point to "concrete secrets" and thus it is not sufficient to merely allude to "broad areas of technology and assert that something there must have been secret and misappropriated." *Id.* at 1266. In this case Verotix states in its complaint that "Verotix has certain technical information, data, patterns, programs, devices, methods, techniques, drawings and process . . . which are 'trade secrets . . . .'" Verotix alleges that Ann Taylor misappropriated Verotix's "technical information, data, patterns, programs, devices, methods, techniques, drawings and processes to implement Verotix's design."

4

We find that the allegations are sufficiently concrete to withstand a motion to dismiss. Verotix was hired by Ann Taylor for a specific purpose and it contends that all of the designs, blueprints, and other documents that it produced in anticipation of the implementation of the designs in Ann Taylor's system are trade secrets. Whether Verotix will be able to eventually prove that all of those documents contain trade secrets is a matter beyond the spectrum of the instant motion. It is sufficiently clear at this stage of the proceedings what Verotix asserts are trade secrets. A plaintiff is not required to plead all facts neccessary to support his claim or plead all the elements of each cause of action alleged in the complaint. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002).

Defendants also argue that Verotix has not pled sufficient facts that indicates that Verotix made efforts to keep the alleged trade secret information confidential as is required by 765 ILCS 1065/2. *See Abbott Labs. v. Chiron Corp.*, 1997 WL 208369, at *3 (N.D. Ill. 1997)(dismissing ITSA claim because complaint did not contain any factual allegations regarding the plaintiff's efforts to keep the alleged trade secret information confidential). Verotix mentions in its amended complaint its "efforts . . . to maintain [the trade secret documents'] confidentiality which include safeguards clearly set out, at a minimum, on the blueprints themselves." This allegation is sufficient to allege the confidentiality of the blueprints. Verotix also alleges that it "never disclosed or authorized the disclosure [or] the use of its design, plans, blueprints, ideas, concepts and documents to third party competitors." Verotix also alleges that its "blueprints, ideas, concepts and documents would not have been disclosed to others and would not have been prepared for Ann Taylor unless Verotix had been engaged to both create and implement the WCS and GOH system." Verotix also alleges that "the designs that Verotix prepared were illustrated in blueprint form and marked as 'NON PUBLIC INFORMATION.'" We find that these allegations are sufficient to allege that Verotix attempted to keep the alleged trade secret

5

information confidential. Therefore, we deny the motion to dismiss the ITSA claims against KSA (Count II) and Ann Taylor (Count I).

II. Fraud Claim

Verotix brings fraud claims against both Ann Taylor and KSA. Federal Rule of Civil Procedure 9(b) requires all claims of fraud to be pled with particularity, Fed. R.Civ. P. 9(b), which requires a plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Defendants claim that because the alleged misrepresentation was a promise of future action, Verotix should also have to meet the heightened pleading requirements for a promissory fraud claim. However, we need not address that issue because we find that Verotix has not met the Rule 9(b) particularity requirements.

Verotix alleges that Ann Taylor made a misrepresentation when Ann Taylor promised Verotix that it could implement the warehouse control system. However, those allegations are insufficient to meet the particularity requirements. In its answer Verotix argues that it provided names of forty employees of Ann Taylor "who were involved in this project" but that still fails to inform Defendants who made the alleged misrepresentations. Verotix tries to side step this issue by pointing out that it identified specific individuals that pressured Verotix to turn over their alleged trade secrets. Again that does not provide the required information to plead the fraud claim with specificity. In its answer Verotix argues that "[i]t can be inferred from the alleged facts that at least the promise to design and build was reiterated over and over by the conduct of the defendant." However, no such inference is apparent from the facts alleged in the amended complaint and the particularity requirement is specifically intended to prohibit such speculation.

6

Verotix also claims in its answer that the fraudulent misrepresentations took place in a meeting referenced in the amended complaint, but again this is not apparent from the allegations in the amended complaint. We therefore, grant the motion to dismiss the fraudulent misrepresentation claim against Ann Taylor (Count III) and the fraudulent misrepresentation claim against KSA (Count IV).

III. Tortious Interference with Contract Claim

KSA argues that Verotix failed to state a tortious interference claim because KSA's alleged conduct is privileged. KSA cites numerous Illinois state court cases that deal with fact pleading in the state courts which have little relevance in a federal venue. KSA contends that under Illinois law, since KSA acted as an agent for Ann Taylor, KSA had a qualified privilege barring a tortious interference claim against KSA. *See Langer v. Becker*, 531 N.E.2d 830 (Ill. App. Ct. 1998). However, KSA concedes that courts should consider various factors such as the actor's motive and the proximity or remoteness of the actor's conduct and the interference. Such factors present unanswered factual issues and it is premature to address them at this juncture. KSA cites *Citylink Group, Ltd. v. Hyatt Corp.*, 729 N.E.2d 869, 877 (7th Cir. 2000) for the proposition that it is well settled under Illinois law that an agent for a corporation has a qualified privilege. However, in that case the court noted that the plaintiffs "failed to allege any facts sufficient to demonstrate that [the agent] was not acting in the interests of its principals . . . ." *Id.* The instant case is thus distinguishable because Verotix alleges that KSA manipulated the rigging of the bidding process in retaliation for the lost StrideRite contract. In such circumstances KSA would not be acting in the best interest of Ann Taylor. KSA has not established that accepting all facts in the complaint as true that Verotix can prove no set of facts in support of its claim which would support a finding that KSA does not have a qualified

7

privilege. Therefore, we deny the motion to dismiss the tortious interference with a contract claim (Count IX) and the tortious interference with prospective economic advantage claim (Count X) against KSA.

IV. Breach of Contract Claim

Ann Taylor claims that Verotix has not properly pled a breach of contract claim. In order to properly plead a breach of contract claim a plaintiff must plead that: 1) a valid and enforceable contract existed, 2) the plaintiff performed obligations under the contract, 3) the defendant breached the contract, and 4) the plaintiff was injured as a result of the breach. *Kundrat v. The Chicago Bd. Options Exch., Inc.*, 2002 WL 31017808, at *8 (N.D. Ill. 2002); *Industrial Enclosure Corp. v. Northern Ins. Corp. of New York*, 1998 WL 852845, at *4 (N.D. Ill. 1998). Ann Taylor contends that Verotix must allege all the elements of a breach of contract cause of action such as an offer, acceptance, and consideration. However, the notice pleading standard in the federal system does not require such extensive fact pleading. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)(stating that a complaint need not allege facts or law sufficient to match up with every element of the cause of action).

It its reply brief Ann Taylor cites *Ramirez v. NutraSweet Co.*, 1997 WL 684984, at *2 (N.D. Ill. 1997) in support of its position that the federal courts adopted the Illinois state courts' pleading standard for breach of contract claims. A close reading of *Ramirez* reveals that the court was addressing a motion for summary judgment rather than a motion to dismiss and thus in *Ramirez* the court was not concerned with the federal pleading standard.

Ann Taylor also argues in her memorandum in support of its motion that the federal courts adopted the Illinois state court pleading standard for breach of contract claims. However, Ann Taylor's string of citations in support of that proposition fails to support Ann Taylor's

8

contention. Ann Taylor cites *Nuccio v. Chicago Commodities, Inc.*, 628 N.E.2d 1134, 1139 (Ill. App. Ct. 1993) in which an Illinois state court held that a plaintiff must plead facts indicating an offer, acceptance, and consideration. Immediately after this state court citation in Ann Taylor's reply is a citation to *Industrial Enclosure Corp.*, 1998 WL 852845 (N.D. Ill. 1998) and a parenthetical stating that the case applied the state court pleading standard. The parenthetical is incorrect. Although the court in *Industrial Enclosure Corp.* cited some state court cases it did not adopt the Illinois pleading requirements. Also, because of the proximity in the brief of *Industrial Enclosure Corp.* to *Nuccio*, an apparently irrelevant case, the reader is lead to infer that the two are related and that the court in *Industrial Enclosure Corp.* adopted the standards set forth in *Nuccio*. However, the court in *Industrial Enclosure Corp.* made no reference to requiring plaintiffs to plead elements such as an offer, acceptance, and consideration and the court did not cite *Nuccio*. Verotix has pled sufficient facts for a breach of contract claim. Ann Taylor allegedly offered to Verotix the opportunity to work on the warehouse control system and allegedly promised to allow Verotix to do the implementation as well. Verotix accepted the offer and began working on the project and a breach occurred when Ann Taylor gave the implementation portion to another vendor. Therefore, we find that Verotix has pled sufficient facts for a breach of contract claim.

Ann Taylor also argues that the parties intended all agreements to be in writing and thus there could not be an oral contract regarding the implementation. Ann Taylor argues that we should infer that there was no oral agreement because of the large amounts of money involved in the implementation project. Ann Taylor argues that we should infer that there was no oral contract because other portions of the retrofit project were allocated by conducting a formal bidding process. Ann Taylor also argues that we should infer that there was no oral agreement because Verotix refused to sign a work for hire agreement and there are conflicting facts relating

9

to the existence of an oral contract. However, under the federal pleading standard all inferences are to be drawn in Verotix's favor, *Bontkowski*, 998 F.2d at 461, and there are sufficient facts in the amended complain to infer that there was a contract relating to implementation. Ann Taylor also claims that the alleged oral contract is barred by the statute of frauds, but we find that there are sufficient facts to infer that the contract could possibly have been completed within a year. Therefore we deny the motion to dismiss the breach of contract claim (Count V).

V. Implied Contract and Quantum Meruit Claims

Ann Taylor argues that the implied contract and quantum meruit claims are preempted by the Illinois Trade Secrets Association. *See Nilssen v. Motorola, Inc.*, 963 F.Supp. 664, 683-84 (N.D. Ill. 1997)(finding that the ITSA preempted implied contract and quantum meruit claims). Ann Taylor correctly points out that the amended complaint appears to indicate that Verotix is seeking damages both under the implied contract claim and the quantum meruit claim for alleged harm to Verotix resulting from the misappropriation of the alleged trade secrets. Verotix argues that it is solely seeking damages under those claims for alleged harm to Verotix resulting from the refusal to allow Verotix to complete the project and the loss of the anticipated compensation. Verotix states clearly in its answer that it is not seeking compensation for the misuse of secret information under the implied contract and quantum meruit claims. We shall dismiss the quantum meruit claim because Verotix alleges that a valid contract governed the obligations between Verotix and Ann Taylor. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Watts v. Advanced Transformer Co.*, 2002 WL 31356449, at *4 (N.D. Ill. 2002). In regards to the implied contract claim we will accept Verotix's interpretation of the amended complaint since Verotix wrote that complaint and we are required to liberally interpret the amended complaint in its favor. However, we will hold Verotix

to its representations made in its briefs submitted to the court and Verotix will not be allowed to receive damages under the implied contract claim resulting from a misuse of secret information. Therefore, we deny the motion to dismiss the implied contract claim (Count VI) and grant the motion to dismiss the quantum meruit claim (Count VII).

VI. Promissory Estoppel Claim

In order to state a promissory estoppel claim in Illinois a plaintiff must allege: "(1) an unambiguous promise; (2) reasonable and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee relied upon the promise to her detriment." *Fischer v. First Chicago Capital Mkt.*, 195 F.3d 279, 283 (7th Cir. 1999). Ann Taylor argues that Verotix failed to properly plead a promissory estoppel claim because Verotix failed to allege an unambiguous promise. However, as stated above, Verotix is not required to allege every fact necessary in support of its claim and all inferences are to be drawn in its favor. From the complaint there are sufficient facts to infer that Ann Taylor promised Verotix in an ambiguous fashion that Verotix would handle the implementation of the warehouse control system and that Verotix justifiably relied on that promise when it began working on the system, and that in reliance on that promise Verotix declined other projects from other customers and charged a reduced price to Ann Taylor, and that Verotix was harmed when Ann Taylor refused to honor the alleged promise. Therefore, we deny the motion to dismiss the promissory estoppel claim (Count VIII).

## CONCLUSION

Based on the foregoing analysis we deny the motion to dismiss the ITSA claims against Ann Taylor (Count I) and KSA (Count II). We also grant the motion to dismiss

the fraudulent misrepresentation claims against Ann Taylor (Count III) and KSA (Count IV). We deny the motion to dismiss the breach of contract claim against Ann Taylor (Count V). We also grant the motion to dismiss the quantum meruit claim against Ann Taylor (Count VII) and deny the motion to dismiss against Ann Taylor (Count VI), but note that Ann Taylor asserts that it is not seeking any damages under that claim for an alleged misuse of secret information. We also deny the motion to dismiss the promissory estoppel claim against Ann Taylor (Count VIII), deny the motion to dismiss the tortious interference with contract claim against KSA (Count IX), and deny the motion to dismiss the tortious interference with prospective economic advantage against KSA (Count X).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: 11-12-03