# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8639 | **DATE** | 8/23/2004 |
| **CASE TITLE** | Verotix Systems vs. Ann Taylor | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the Court hereby denies the KSA defendants' motion for summary judgment on the tortious interference with contract claim and grant the KSA defendants' motion for summary judgment on the misappropriation of trade secrets claim. Plaintiff's motion to bar defendants KSA's proposed damage expert is granted. Enter Memorandum Opinion. Status hearing set for 10/19/04 to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 2 4 2004 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 102 |
| | Copy to judge/magistrate judge. | | |
| MW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

| | | |
|---|---|---|
| VEROTIX SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  02 C 8639 |
| | ) | |
| ANN TAYLOR, INC.,  ANN TAYLOR | ) | |
| STORES CORPORATION,  ANN | ) | |
| TAYLOR DISTRIBUTION SERVICES, | ) | |
| INC.,  ANN TAYLOR RETAIL, INC., | ) | |
| KURT SALMON ASSOCIATES, INC., | ) | |
| KURT SALMON ASSOCIATES,  KURT | ) | |
| SALMON ASSOCIATES CAPITAL | ) | |
| ADVISORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**AUG 2 4 2004**

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Kurt Salmon Associates, Inc.'s

and Defendant Kurt Salmon Associates Capital Advisors, Inc.'s (collectively

referred to as "KSA") motion for summary judgment.  This matter is also before the

court on Plaintiff Verotix Systems, Inc.'s ("Verotix") motion to bar.  For the reasons

stated below we grant KSA's motion for summary judgment in part and deny it in

part and grant Verotixs motion to bar.  We also grant the motion to bar.

1

# BACKGROUND

Beginning in early 1998, Ann Taylor Inc. ("Ann Taylor") hired Verotix to trouble shoot its control system for the Ann Taylor warehouse in Louisville, Kentucky. In late 1998, Ann Taylor installed the new control system at the Louisville facility called the warehouse control system. In February of 2000, Ann Taylor began a retrofit project for its Louisville facility and allegedly hired Verotix to consult, design, and implement the warehouse control system. Verotix contends that it came up with a design change for Ann Taylor that became known as the "one hanger" or "garment on a hanger" ("GOH") system. Verotix alleges that the invention of the GOH system resulted in a more efficient routing system and saved Ann Taylor significant costs. Verotix claims that its consulting services were billed at a reduced rate because of Ann Taylor's promise to use Verotix to design, implement, license software, and maintain the warehouse control system at the Louisville facility. Verotix also claims that it devoted over 4000 man hours to do consulting work for the retrofit project and that it limited the amount of business from other customers in order to have the manpower necessary to work on the retrofit project.

Ann Taylor hired KSA as the project integrator for the retrofit project. Verotix contends that KSA held a grudge against Verotix because in March 2000, KSA acted as a project coordinator for a project funded by StrideRite and KSA lost its contract because Verotix demonstrated that it was capable of meeting the

customer's goals without a project integrator. In July 2000, as part of the retrofit

project, Ann Taylor decided to make changes to its receiving and shipping conveyor

system and instructed KSA to solicit outside bids for the work. Verotix alleges that

it submitted a bid for the project, but that KSA put pressure on Verotix to submit

designs sooner than other vendors. Verotix also contends that KSA made Verotix

include costs in its bid that other vendors did not have to include and thus, KSA was

able to rig the bidding so that Verotix could not submit the lowest bid. On October

20, 2000, Verotix was informed that Key Handling Systems ("Key") submitted the

lowest bid for the project. KSA also informed Verotix that another outside vendor

would be completing the implementation portion of the warehouse control system.

Ann Taylor allowed Verotix to finish the project through February of 2001. Verotix

alleges that Ann Taylor subsequently used the designs and blueprints submitted by

Verotix to implement the warehouse control system at the Louisville facility and to

implement design enhancements created by Verotix such as the "one Hanger"

design. In its first amended complaint Verotix brings an Illinois Trade Secret Act

("ITSA"), 765 ILCS 1065 *et seq.*, claim against Ann Taylor (Count I), an ITSA

claim against KSA (Count II), a fraudulent misrepresentation claim against Ann

Taylor (Count III), a fraudulent misrepresentation claim against KSA (Count IV), a

breach of contract claim against Ann Taylor (Count V), a breach of implied contract

claim against Ann Taylor (Count VI), a quantum meruit claim against Ann Taylor

(Count VII), a promissory estoppel claim against Ann Taylor (Count VIII), a tortious

3

interference with contract claim against KSA (Count IX), and a tortious interference with prospective economic advantage claim against KSA (Count X).

Defendant Kurt Salmon Associates filed a motion to dismiss and Defendant Ann Taylor also filed a motion to dismiss. On November 12, 2003, we denied the motions to dismiss in part and granted the motions to dismiss in part. We denied the motion to dismiss the ITSA claims against Ann Taylor (Count I) and KSA (Count II). We granted the motion to dismiss the fraudulent misrepresentation claims against Ann Taylor (Count III) and KSA (Count IV). We denied the motion to dismiss the breach of contract claim against Ann Taylor (Count V). We also granted the motion to dismiss the quantum meruit claim against Ann Taylor (Count VII) and denied the motion to dismiss against Ann Taylor (Count VI) , but noted that Ann Taylor asserted that it is not seeking any damages under that claim for an alleged misuse of secret information. We also denied the motion to dismiss the promissory estoppel claim against Ann Taylor (Count VIII), denied the motion to dismiss the tortious interference with contract claim against KSA (Count IX), and denied the motion to dismiss the tortious interference with prospective economic advantage claim against KSA (Count X). On May 21, 2004, Verotix reached a settlement with Ann Taylor regarding the remaining claims against Ann Taylor. KSA has now filed a motion for summary judgment on the remaining claims.

## DISCUSSION

### I. Tortious Interference With Contract Claim

KSA seeks summary judgment on the tortious interference with contract claim. Under Illinois law the elements that must be proven for a tortious interference with contract claim are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages." *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003)(quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)). Both sides in this action agree that a key piece of evidence produced in discovery relating to the tortious interference with contract claim is an e-mail sent by Jack Horst ("Horst"), who worked for KSA, to Ann Taylor. According to KSA, Horst indicated in the e-mail that Verotix was not being cooperative in regards to Ann Taylor's request that Verotix submit a bid to Key.

#### A. Agent Privilege

KSA argues that during the period in question it was acting as the agent of Ann Taylor and that KSA is therefore conditionally privileged against a tortious

interference with contract claim. KSA cites *Traum v. Equitable Life Assurance Society of U.S.*, 240 F.Supp.2d 776 (N.D. Ill. 2002) which cites as support for its rule regarding a qualified privilege *Stafford v. Puro*, 63 F.3d 1436 (7ᵗʰ Cir. 1995) in which the court stated that there is a conditional privilege that protects "corporate officers and directors." *Id.* at 1442. However, KSA is not an officer or director of Ann Taylor. KSA also cites *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989) in which the court stated that privilege extends to "corporate officers and directors" and "management." *Id.* at 677. However, KSA is not management for Ann Taylor. KSA also cites *Naeemullah v. Citicorp Servs., Inc.*, 78 F.Supp.2d 783 (N.D. Ill. 1999) in which the court stated that the privilege extends to "[c]orporate officers, supervisors, and co-workers." However, KSA is none of those for Ann Taylor.

KSA also cites *Williams v. Shell Oil Co.*, 18 F.3d 396 (7ᵗʰ Cir. 1994) in which the court stated that the privilege extends to a defendant that "acts to protect an interest 'which the law deems to be of equal or greater value than the plaintiff's contractual rights.'" *Id.* at 402. In this case KSA has not made any argument that it was seeking to protect an interest of equal or greater value than Verotix's contractual interest. KSA argues repeatedly that it was placed in charge of the bidding process by Ann Taylor and thus it was expected to give Ann Taylor input such as the Horst e-mail. However, there is insufficient evidence to indicate that Horst was acting within the scope of KSA's employment by Ann Taylor. The fact that Romano

declared that Horst's e-mail was not even considered in making his decision is also an indication that Horst was not providing expected input regarding Verotix.

Finally, KSA cites *J.D. Edwards & Co. v. Podany,* 168 F.3d 1020 (7th Cir. 1999) in which the court recognized a qualified privilege for consultants and advisors. *Id.* at 1022. However, KSA was not hired by Ann Taylor as a consultant or an advisor. KSA did not file a response to Verotix's Local Rule 56.1 statement of additional facts. Therefore, pursuant to Local Rule 56.1 all the facts contained therein are deemed to be admitted. KSA admits that it was hired to run the bidding process for Ann Taylor. ( SAF 7). It is possible that KSA during the course of its work for Ann Taylor gave some advice. However, that would be the case for any entity employed by Ann Taylor.

The terms "consultant" and "advisor" were clearly intended by the court in *J.D. Edwards & Co.* to refer to entities specifically retained as a consultant or advisor. The court in *J.D. Edwards & Co.* stated that "[a] consultant is hired to give advice." 168 F.3d at 1022. To illustrate the role of a consultant, the court indicated that the consultant customarily gives advice that might "lead to downsizing, layoffs, outsourcing, and countless other perturbations . . . ." *Id.* The court also referred to "the consulting business." *Id.* In *J.D. Edwards & Co.* a third party hired a consulting firm which the plaintiff claimed interfered with a contract between the third party and the plaintiff to purchase computer services. 168 F.3d at 1022. However, in the instant case, KSA was hired, not as a consulting firm, but rather to

7

run the bidding process.

Even if KSA were covered by the qualified privilege recognized in *J.D. Edwards*, the court in that case stated that the privilege was only applicable where the alleged interference was "advice given within the scope of the consultant's engagement" and where the consultant gave honest advice to benefit his client rather than to harm the plaintiff. *Id.* at 1022-23.

In the instant case, the evidence shows that the criticisms in the Horst e-mail were not within the scope of KSA's employment by Ann Taylor. For instance Romano contends that he did not even rely upon the e-mail when making the decision to select Key. Also, there is a legitimate dispute as to whether the statements made by Horst in his e-mail were accurate and honestly made. There is evidence indicating that Horst may have been seeking revenge for a prior project when KSA lost business because of cost savings suggested by Verotix. ( SAF 16). These matters are for the trier of fact to resolve. KSA admits that it openly criticized [Verotix] for its pricing." (SAF 13). KSA admits that bidders were given extensions, but Verotix was not given an extension. (SAF 15). KSA admits that Verotix never participated in a formal or informal bidding process and that Horst told Verotix that Verotix had lost the bid for the equipment and its services were no longer needed. (SAF 8, 9, 10). KSA admits that its excuse for choosing Key was that it wanted one vendor to supply the equipment and the WCS and admits that this excuse is inconsistent because Key did not end up supplying both aspects of the

project. (SAF 18). KSA admits that at times it was behind schedule and significantly over budget on the project. (SAF 11, 12). These, and other admitted facts are sufficient to create legitimately disputed issues that preclude a finding that KSA was privileged in its conduct.

### B. Good Faith Statement

KSA argues that there is no evidence to rebut its position that the Horst e-mail was not an "honestly-made, good faith statement of opinion. . . ." (Reply 6). To defeat the motion for summary judgment Verotix is not required to prove conclusively that Horst did not make an honest and good faith statement in e-mail. Horst's honesty and good faith is a matter to be judged by the trier of fact. Verotix contends that the substantive allegations in the statement were unjustified and harmful to Verotix. There is also evidence that KSA and Verotix had a prior dispute before the Ann Taylor bidding process, and taking into consideration the admitted facts in Verotix's statement of additional facts, there are issues raised as to the honesty of Horst. It will be for the trier of fact to determine whether Horst intentionally and maliciously sought to harm Verotix because of a grudge.

### C. Inducement to Breach

KSA also argues that it did not induce Ann Taylor to breach its contract with Verotix. KSA contends that Ann Taylor independently made the decision to ask for

competitive bids for the implementation and it was an independent decision by Ann Taylor to choose a bidder other than Verotix. KSA argues that it is entitled to summary judgment because it is the "undisputed testimony" of Anthony Romano ("Romano"), who is employed by Ann Taylor, that "the Horst comment did not play a role in his decision to proceed with the Key/Pyramid bid." (SJ Mot. 11). While it may be true that such was Romano's "undisputed testimony," it does not necessarily follow that it is an undisputed fact. The submission of a signed declaration by Romano does not mean that all facts included in the declaration are proven in the instant action. It will be for the trier of fact to judge whether or not Romano is being truthful in regards to the influence of the Horst e-mail. This is especially true when the declaration is being made by a former business associate of KSA, the defendant, and by a person working for an entity that was once a co-defendant in the instant action.

## II. Misappropriation of Trade Secrets

KSA seeks summary judgment on the misappropriation of trade secrets claim. For a claim for misappropriation of a trade secret under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, a plaintiff must establish "that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc*, 342 F.3d 714, 721 (7th Cir. 2003)

Verotix makes it clear in its answer that the trade secrets at issue were in the August 20, 2000 function specification that included written plans, blueprints, ideas, concepts, and documents for the WCS to be used by Verotix to implement the WCS system. KSA argues that the WCS functional specification document was prepared by Verotix for Ann Taylor and that Verotix agreed that the work would be co-owned by Ann Taylor and Verotix. Verotix did not respond to this argument. In regards to the designs, KSA argues that Ann Taylor retained Verotix on an hourly basis for the design process to participate in the brainstorming sessions and that Ann Taylor co-owned the fruits of the labors of the process. Again, Verotix did not respond to this argument. KSA also points to evidence indicating that Verotix gave the alleged trade secret information to KSA.

Even if KSA could show that the items in question were trade secrets and were kept secret, there is no evidence that Ann Taylor gave the alleged trade secrets to KSA and that KSA misused the information. For instance, Verotix has not pointed to evidence that would rebut Horst's testimony that KSA did not provide the Verotix WCS Functional Specification to any bidder or any other party. We must keep in mind that the claim at issue before the court is against KSA and not against Ann Taylor. Verotix must connect up the claim in regards to KSA's alleged wrongdoing and Verotix has failed to do so. Verotix argues that misappropriation can be inferred because Ann Taylor did not have the capability of implementing the WCS. However, such speculation is not sufficient to defeat a motion for summary

judgment. Verotix has not pointed to sufficient evidence for a reasonable trier of fact to find in its favor on the misappropriation of trade secrets claim. Therefore, we grant KSA's motion for summary judgment on the misappropriation of trade secrets claim.

### III. Motion To Bar KSA's Proposed Expert

Verotix seeks to bar KSA's proposed expert testimony relating to damages. On March 24, 2004, we stated by minute order that all discovery had to be completed by May 30, 2004. Verotix contends that KSA did not disclose an expert for damages until May 31, 2004, and Verotix claims that it did not receive notice of the disclosure until June 1, 2004. KSA argues that the court did not set deadlines for expert disclosure and that therefore, KSA was technically free to disclose experts anytime up until the close of discovery. However, common sense must be used by parties when receiving an order from the court. Obviously, if the court ordered discovery to be completed by a certain date, notification to the opposing party of an expert on the last day of discovery or after the close of discovery, would not leave the opposing party with sufficient time to conduct appropriate discovery relating to the disclosed expert. KSA acknowledges this fact but, claims that there is no harm due to its late disclosure because Verotix can simply take the proposed expert's deposition sometime before trial if KSA's summary judgment motion does not resolve the remaining claims. (Reply 5). However, the parties do not dictate to the

court the discovery schedule. We set a deadline for the close of discovery. That deadline has passed. KSA has never requested an extension for additional discovery to accommodate its expert disclosure. Therefore, we grant Verotix's motion to bar.

## CONCLUSION

Based on the foregoing analysis, we deny KSA's motion for summary judgment on the tortious interference with contract claim and grant KSA's motion for summary judgment on the misappropriation of trade secrets claim. We also grant Verotix's motion to bar KSA's proposed damage expert.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 23, 2004