# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8639 | **DATE** | 10/19/2004 |
| **CASE TITLE** | Verotix Syst vs. Ann Taylor | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Counsel appeared and reported to the Court that a mediation date has been set. For the reasons stated in the attached memorandum opinion, KSA defendants' motion to reconsider the Court's order dated 08/24/04 is denied. The parties shall exchange proposed witness lists by 11/02/04. Motions in limine are to be filed by 11/09/04. Responses to the motions in limine are to be filed by 11/23/04 and replies by 11/30/04. Joint pretrial order as outlined in this Court's standing order regarding pretrial order shall be submitted to chambers by 01/10/05. Copies of the Court's standing order regarding pretrial maybe obtained from this Court's web page or from this Court's Courtroom Deputy. Pretrial conference set for 01/27/05 at 10:30 a.m. Jury trial set to begin on 01/31/05 at 9:30 a.m. Enter Memorandum Opinion

(11) ■ For further detail see Memorandum Opinion attached to the original minute order.

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | | | 107 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom MW6 deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VEROTIX SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 8639 |
| | ) | |
| ANN TAYLOR, INC., ANN TAYLOR STORES CORPORATION, ANN TAYLOR DISTRIBUTION SERVICES, INC., ANN TAYLOR RETAIL, INC., KURT SALMON ASSOCIATES, INC., KURT SALMON ASSOCIATES, KURT SALMON ASSOCIATES CAPITAL ADVISORS, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

DOCKETED
OCT 2 0 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Kurt Salmon Associates, Inc.'s and Defendant Kurt Salmon Associates Capital Advisors, Inc.'s (collectively referred to as "KSA") motion for reconsideration of this court's partial denial of KSA's motion for summary judgment on August 24, 2004. For the reasons stated below, we deny the motion for reconsideration.



# BACKGROUND

Beginning in early 1998 Ann Taylor Inc. ("Ann Taylor") hired Verotix to trouble shoot its control system for the Ann Taylor warehouse in Louisville, Kentucky. In late 1998 Ann Taylor installed the new control system at the Louisville facility called the warehouse control system. In February of 2000, Ann Taylor began a retrofit project for its Louisville facility and allegedly hired Verotix to consult, design, and implement the warehouse control system. Verotix contends that it came up with a design change for Ann Taylor that became known as the "one hanger" or "garment on a hanger" ("GOH") system. Verotix alleges that the invention of the GOH system resulted in a more efficient routing system and saved Ann Taylor significant costs. Verotix claims that its consulting services were billed at a reduced rate because of Ann Taylor's promise to use Verotix to design, implement, license software and maintain the warehouse control system at the Louisville facility. Verotix also claims that it devoted over 4000 man hours to do consulting work for the retrofit project and that it limited the amount of business from other customers in order to have the manpower necessary to work on the retrofit project.

Ann Taylor hired KSA as the project integrator for the retrofit project. Verotix contends that KSA held a grudge against Verotix because in March 2000 KSA acted as a project coordinator for a project funded by StrideRite and KSA lost its contract because Verotix demonstrated that it was capable of meeting the

2

customer's goals without a project integrator. In July 2000 as part of the retrofit project, Ann Taylor decided to make changes to its receiving and shipping conveyor system and instructed KSA to solicit outside bids for the work. Verotix alleges that it submitted a bid for the project, but that KSA put pressure on Verotix to submit designs sooner than other vendors. Verotix also contends that KSA made Verotix include costs in its bid that other vendors did not have to include and thus KSA was able to rig the bidding so that Verotix could not submit the lowest bid. On October 20, 2000, Verotix was informed that Key Handling Systems ("Key") submitted the lowest bid for the project. KSA also informed Verotix that another outside vendor would be completing the implementation portion of the warehouse control system. Ann Taylor allowed Verotix to finish the project through February of 2001. Verotix alleges that Ann Taylor subsequently used the designs and blueprints submitted by Verotix to implement the warehouse control system at the Louisville facility and to implement design enhancements created by Verotix such as the "one Hanger" design. In its first amended complaint Verotix brings an Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065 *et seq.*, claim against Ann Taylor (Count I), an ITSA claim against KSA (Count II), a fraudulent misrepresentation claim against Ann Taylor (Count III), a fraudulent misrepresentation claim against KSA (Count IV), a breach of contract claim against Ann Taylor (Count V), a breach of implied contract claim against Ann Taylor (Count VI), a quantum meruit claim against Ann Taylor (Count VII), a promissory estoppel claim against Ann Taylor (Count VIII), a tortious

3

interference with contract claim against KSA (Count IX), and a tortious interference with prospective economic advantage against KSA (Count X).

Defendant Kurt Salmon Associates filed a motion to dismiss and Defendant Ann Taylor also filed a motion to dismiss. On November 12, 2003, we denied the motions to dismiss in part and granted the motions to dismiss in part. We denied the Ann Taylor's motion to dismiss the ITSA claims (Count I) and KSA (Count II). We also granted Ann Taylor's and KSA's motion to dismiss the fraudulent misrepresentation claims (Count III)(Count IV). We denied Ann Taylor's motion to dismiss the breach of contract claim (Count V). We also granted Ann Taylor's motion to dismiss the quantum meruit claim (Count VII) and denied Ann Taylor's motion to dismiss the promissory estoppel claim (Count VI). We also denied Ann Taylor's motion to dismiss the promissory estoppel claim(Count VIII), denied KSA's motion to dismiss the tortious interference with contract claim (Count IX), and denied KSA's motion to dismiss the tortious interference with prospective economic advantage claim (Count X). On May 21, 2004, Verotix reached a settlement with Ann Taylor regarding the remaining claims against Ann Taylor.

KSA subsequently filed a motion for summary judgment on the remaining claims. On August 24, 2004, we denied KSA's motion for summary judgment on the tortious interference with contract claim and granted KSA's motion for summary judgment on the misappropriation of trade secrets claim. In addition, we granted Verotix's motion to bar KSA's proposed damage expert. KSA has now filed a

motion for reconsideration regarding our denial of its summary judgment motion on the tortious interference with contract claim.

## LEGAL STANDARD

A motion for reconsideration may be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Such motions cannot be used as a "vehicle to produce new evidence that could have been" produced earlier or as a vehicle to reargue the same arguments presented to the court on a prior occasion. *Id.*

## DISCUSSION

KSA conveniently omits any reference to the legal standard for a motion for reconsideration which renders the contents of its instant motion entirely improper. KSA's entire motion for reconsideration is nothing more than arguments that should have been presented before our prior ruling and attempts to re-hash the same arguments to try to get the court to change its mind the second time around. A motion for reconsideration is not the proper vehicle for such arguments. Therefore, we may deny the motion for reconsideration on that basis alone.

Despite the fact that KSA could and should have presented its arguments

5

before our prior ruling, which would have allowed for the more efficient use of judicial resources, and despite the fact that we have already addressed some of KSA's arguments, we shall further expend judicial resources in order to leave no doubt that KSA's arguments are completely without merit.

In our prior ruling we made reference to an email sent from Jack Horst ("Horst"), who worked for KSA, to Ann Taylor. KSA acknowledged in its prior briefs that the email indicated that Verotix was not being cooperative in regards to Ann Taylor's request that Verotix submit a bid to Key. (KSA Brief in Support of SJ 9). KSA argues that we improperly considered the email since KSA supplied a declaration from Anthony Romano ("Romano"), Executive Vice-President of Ann Taylor, stating that the Horst email played no role in his decision to select a different vendor for the WCS implementation. KSA argues that this issue is thus "undisputed." (Recon Mot. 3). However, as we explained in our prior ruling, KSA cannot avoid being brought before a trier of fact and deny Verotix its day in court by providing affidavits and declarations from individuals attempting to whitewash over any disputed claims. KSA criticizes the court for not understanding the standard for a summary judgment motion, but it is clearly KSA that does not have a firm grasp on the summary judgment standard.

As we indicated in our prior ruling, whether or not Romano is telling the truth is a matter to be addressed by the trier of fact, particularly when Romano works for an entity that was once a co-defendant in the instant action and was a former

business associate of KSA. Whether or not Romano is telling the truth and whether or not he considered the email in his decision making process is a key determination in this action. KSA's contention that we should glance at a written declaration outside the presence of Romano and accept its veracity at face value is not in accordance with the law. The issue of credibility is for the trier of fact alone and is not an issue that may be decided on a motion for summary judgment. To the extent that reasonable inferences could be drawn in reviewing a motion for summary judgment, we did not conclude in our prior ruling that no reasonable trier of fact could find that Romano considered the Horst email.

As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, "summary judgment motions do[] not denigrate the role of the jury." 477 U.S. 242, 255 (1986). The court explained that the summary judgment process "by no means authorizes trial on affidavits" and that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* The Court further stated that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

KSA argues that in order to avoid summary judgment on the basis of credibility, there must be conflicting evidence and KSA contends there is no evidence that contradicts Romano's assertion that he did not consider the Horst

email. There is sufficient conflicting circumstantial evidence in the instant action. Nothing requires Verotix to specifically introduce an opposing declaration to contradict Romano's declaration. Verotix has introduced evidence that shows that Horst sent the email criticizing Verotix to Romano and that Romano subsequently made the pertinent decision that was adverse to Verotix. KSA does not even deny that those facts are untrue. KSA contends that Verotix must come forth with evidence that specifically contradicts Romano's declaration. KSA naturally attempts to impose such a heavy burden on Verotix because, unless Verotix were to somehow obtain a contradictory declaration from Romano himself regarding what Romano considered in his own mind when making the pertinent decision, it would be virtually impossible for Verotix to meet such a burden. The veracity of Romano's declarations is a matter to be decided at trial by the trier of fact. Therefore, we deny KSA's motion for reconsideration.

## CONCLUSION

Based on the foregoing analysis, we deny KSA's motion for reconsideration.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 19, 2004